Page 1

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT


 - - - - - - - - - - - - - - - - - - - x

ZACK K. DE PIERO,                       Main Case No.

          Appellant,                    25-1952

v.

PENNSYLVANIA STATE UNIVERSITY;:

MARGO DELLICARPINI; et al.,

          Appellees.

- - - - - - - - - - - - - - - - - - - -x

                  March 18, 2026

                  9:00 AM


B E F O R E:

HON. MATEY, FREEMAN, and CHUNG

CIRCUIT JUDGES

/s/ Kristin Gambel

Transcribed by:  Kristin Gambel

March 30, 2026

Page 3

APPEARANCES:

FOR THE APPELLANT:

JAMES L. KERWIN, ESQ.

Mountain States Legal Foundation

2596 S Lewis Way

Lakewood, CO 80227


FOR THE APPELLEES:

JAMES A. KELLER, ESQ.

Saul Ewing

1735 Market Street

Suite 3400

Philadelphia, PA 19103

Page 4

C O N T E N T S

ORAL ARGUMENT OF:                                            PAGE

    JAMES L. KERWIN, Esq.                                    5; 27
    On Behalf of the Appellant

    JAMES A. KELLER, Esq.                                    16
    On Behalf of the Appellees

Page 5

P R O C E E D I N G S

JUDGE MATEY:  Good morning.  We will begin arguments this morning with case number 25-1952, De Piero v. the Pennsylvania State University.

Mr. Kerwin?

MR. KERWIN:  Thank you, Your Honor.  I'm James Kerwin from Mountain States Legal Foundation.  We represent plaintiff/appellant Zack De Piero.  Professor De Piero is here in the courtroom today along with his wife, Sabira.  And I've reserved four minutes of my time for rebuttal.

JUDGE MATEY:  That'll be granted.

ORAL ARGUMENT OF JAMES L. KERWIN, ESQ.

ON BEHALF OF THE APPELLANT

MR. KERWIN:  Thank you, Your Honor.  In the United States of America, employers are required to maintain race neutrality with respect to the terms and conditions of employment.  What that means, very obviously, is they can't select who they're going to hire based on their race, they can't select -- they can't decide how much they're going to pay based on race, and similar concrete terms and conditions of employment.  So too, employers are required to maintain race neutrality with respect to what's been referred to as the working environment.  That is something like the mental landscape that employees have when they go to work.  They're feeling reasonably understood about messages their receiving,

Page 6

about their standing, their ability to progress in their chosen careers, and things like that.

To give an example of a very obvious case that would violate the prohibition against discrimination in working environment, take this hypothetical example.  Let's say we have an employer who divides their employees into two groups based on their race, and says to one group, we're very happy that you're here.  We're very impressed with your accomplishments.  You're going to go a long way here with us.  The sky is the limit for you.  And says to the other group, you are barely tolerated here.  Your accomplishments are less than they would appear on the surface.  We think that the things that you have to say, we've heard it all before.

JUDGE MATEY:  So let's talk about those kinds of statements.  What statements are you specifically referring to as forming the basis for the retaliation claims?  Is it anything other than the October 17th meeting?

MR. KERWIN:  I'm sorry, Your Honor.  If you're asking about what was the retaliation on the part of Penn State University against my client, or what was his protected speech?  Is that what you're asking?

JUDGE MATEY:  Talk about the retaliation claims first.  What statements are you referring to as the basis for the statutory retaliation claims, right?  Is it just the statements at the October 17th meeting, or is there more?

Page 7

MR. KERWIN:  No, Your Honor.  The statutory retaliation claim, again, is based on any opposition to discrimination.  So there are quite a number of statements in the record.  Let's start with the summer of 2020.  And what happened -- we know about this, by the way, because of a complaint that was later filed by his supervisor, Prof. Naydan, against him that said, back in the summer of 2020, Zack De Piero said a bunch of things that I'm going to refer to as microaggressions.  They are clearly statements that are protected as opposing what he reasonably believed was discrimination.  Let's talk about those.

I'm sorry.  I'm going to grab a little note here because I didn't expect to go to this claim first.

JUDGE CHUNG:  And just so I'm clear, you're listing the protected conduct now?

MR. KERWIN:  That's right.  That's the question I was asked.  So we jumped to the First Amendment -- or to the statutory retaliation claim rather than the hostile work environment, which is fine.  There are three things that Prof. De Piero brought up in the summer of 2020.  He did not allow to go unexamined allegations that women and nonwhite instructors have a harder time enforcing mask mandates.  He sought support for allegations that were raised at professional development meetings that teaching evaluations were biased against women and nonwhite professors.  And he criticized -- he

Page 8

was accused of quote/unquote "criticizing scholarly work by a famous scholar of color."  And then in April of 2021, he had a meeting with Friederike Baer, who is the head of the Arts and Humanities Department -- the entire School of Arts and Humanities at Penn State University.  During that, he brought up that teachers were not being well-trained because they were being -- the focus of the training sessions had gone from helping people teach better to issues of identity.  But more importantly, in terms of the statutory retaliation claim, he mentioned that he was being harassed by the trainings.

In September 2021, he had a meeting -- he filed a formal complaint and had, I think, two meetings with the head of the Affirmative Action Office, where he raised issues that would all be protected under Title VII's anti-retaliation provision.  So those are -- and then, there are statements at the professional development meetings themselves.  All of those, we argue, and we think a jury could find, were protected under Title VII.  So I hope that's answered your question. There's significant overlap, obviously, between the statutory retaliation claim and the First Amendment claim.  So there are issues -- some of the discrete acts of speech that Prof. De Piero engaged in go to -- there's a dispute about whether they're over matters of public concern, right, which they need to be in order to satisfy the First Amendment prerequisite.

JUDGE MATEY:  Can we stay with the retaliation claim

Page 9

for a moment?  What adverse employment actions do you think the District Court did not sufficiently address?

MR. KERWIN:  Oh.  So Prof. De Piero was investigated for microaggressions, right, based on these statements, the very ones that I've just listed.  He was investigated.  He was found to have violated a professional standard; the professional standard that you must be -- by the way, these are important, right?  Like, when you are a nontenured professor at a public university, and there's a -- and you have the head of an important office signing off on a disciplinary finding that you have violated professional standards of cordiality and things like that, that matters a lot.

JUDGE CHUNG:  So the first adverse --

MR. KERWIN:  I'm sorry?

JUDGE CHUNG:  So the first adverse action is the December letter?

MR. KERWIN:  That's correct, yes.

JUDGE CHUNG:  Focusing on --

MR. KERWIN:  Yeah.

JUDGE FREEMAN:  -- Judge Matey's questions?  Okay.

MR. KERWIN:  Yes.

JUDGE CHUNG:  So the first letter, it's the December letter?

MR. KERWIN:  Yes.  And I want to talk briefly about the District Courts.  This is the one area where -- most of

Page 10

what's happened here is that the District Court inappropriately took over the jury's role in terms of fact-finding, but that's not what you're asking.  In this particular instance on the statutory retaliation claim, there was a clear error of law.  The court relied on a line of cases beginning with Weston that analyzed whether an adverse action was adverse enough for statutory retaliation claim under Title VII under an old standard, which said because Title VII is concerned with the terms and conditions of employment, for retaliation purposes, whatever it is --

JUDGE CHUNG:  By comparison, it's dissuasive (indiscernible).

MR. KERWIN:  Yes.  I want to make one point very clear.  Appellees' counsel points out in their brief that the District Court said in a parenthetical, this case was overruled on other grounds by the Supreme Court.  That's not right. Weston was overruled on this very ground.  That's what Weston was about.  There wasn't anything else for the Supreme Court to overrule Weston on.  Yes.

JUDGE FREEMAN:  I understand your legal argument and the difference between the two.  But I did want to hear the other adverse actions that you were alleging.  I understand the December letter.  But are there others per Judge Matey's question that the District Court failed to address or addressed -- I mean, I know you're saying all of them were

Page 11

incorrect based on not adhering to Burlington. But other than the December letter, what other adverse actions?

MR. KERWIN: Sure. I mean, Prof. De Piero's annual performance reviews went from a five out of five on one of the two out of the three graded scores to a four. And then, his other one went down to a two, in essence, out of -- that had never happened before. So the question, again, is whether those adverse actions -- in the context that we're talking about; not abstractly, not based on what happened in Weston -- would be something that could reasonably deter another individual from raising the same kinds of complaints that Prof. De Piero did.

JUDGE CHUNG: And is your causation theory -- it seems to be individual; that each individual defendant, as far as the PHRA, had their own retaliatory motive, and that that could be imputed to PSU. But I'm not seeing a Cat's Paw Theory argued. Are you trying to argue that anyone else's retaliatory motive can be -- for instance, if we were to say Naydan did have retaliatory motive, but Borges didn't for the December letter, I'm not seeing a Cat's Paw Theory pled or argued that her discriminatory motive carries over to that action.

MR. KERWIN: Well, I'd have to say, Your Honor, given that that wasn't briefed or argued before, I'm not prepared to --

JUDGE CHUNG: Okay.

Page 12

MR. KERWIN:  This is --

JUDGE CHUNG:  To address.  That's fine.  I'm just trying to make sure I understand the contours of --

MR. KERWIN:  Yes.

JUDGE CHUNG:  -- your theory of liability.

MR. KERWIN:  But I do think that I understand your question.  It may well be that a jury would have an easier time finding the facts that should have gone to a jury about causation with respect to some defendants and others.  I don't think that changes the outcome on summary judgment for any of them, right?  I think there's enough for a jury to have found without a Cat's Paw Theory that each individual who is involved in these retaliatory acts indeed had a retaliatory motive.

I mean, if we're going to talk one at a time, let's talk about the head of the Affirmative Action Office, Carmen Borges, I believe, is -- I'm not sure how you pronounce her name, but I believe that's it.  She said -- and we have a recording of this hour and a half long meeting over and over again -- that Prof. De Piero should get over his objections to what was going on at Penn State University because, I think she said, this is the trend in the United States of America.  This is just the way things are going.  She doesn't want -- I think a jury could reasonably infer from statements like that that she doesn't want Penn State University to be out of step with the rest of the country.  So she doesn't want Prof. De

Page 13

Piero's -- she would like to silence him, right, which is the retaliatory motive that you're asking about, right?  This is the head of the affirmative action office.  We have people involved that are high-level administrators.  I think Your Honor has already basically indicated -- I see that my time is almost up -- that it's pretty clear that Prof. De Piero's immediate supervisor had retaliatory motivation to do what she did.  I mean, she says right in her complaint of discrimination against him many of the reasons that she says that she found him to be microaggressing her had to do with the content of his speech.  He is questioning the scholarship of a scholar of color.  He's not taking my -- yes.

JUDGE CHUNG:  And can I ask you about that, a little bit on your First Amendment motion to dismiss posture, your colleagues argue that we should consider some of the discovery issue -- discovery.  You said we shouldn't.  As far as -- they basically said we could take it as a motion for summary judgment given all of the discovery that had been conducted. And some of the discovery seems to weigh in your favor.  But your reply, you say we should just take it on a motion to dismiss posture.  And I'm just wondering what additional discovery is needed?  And are there different arguments on different anticipated discovery?

MR. KERWIN:  Yes.  My time is up?  Can I answer her question?

JUDGE MATEY:  Yes, please.

MR. KERWIN:  So that's a very good question, Your Honor.  So it depends on the element that we're talking about, right?  So for the First Amendment claim at the motion to dismiss phase, the claims were dismissed on the matter of public concern element and on -- I'm sorry.  I'm going to start this answer again.  Here's what the discovery needs to be taken on this.  We don't need discovery on the matter of public concern.  I misspoke, Your Honor.

JUDGE CHUNG:  Okay.

MR. KERWIN:  It is a matter of public concern.  The issue has to do with causation, really.  So what wasn't done was any discovery taken on, for instance, the op-ed that Prof. De Piero published; who knew about it?  Were they involved with the disciplinary process later on?  As a matter of fact, the last two items in the record in the appendix, there were a few emails that were produced in discovery that touched on this, probably by accident.  Andy August, who is one of the highest-level administrators at PSU, about, like, the very day that he was reviewing Liliana Naydan's complaint against Prof. De Piero, there's an email circulated that says, hey, by the way, did you know that he just published this op-ed?  And there's back and forth about, well, I'm not so sure that he understands, things like that.  We need discovery on that.

JUDGE CHUNG:  Do you think discovery could produce

Page 15

more such materials?

MR. KERWIN: Yeah, correct. And I think that we would want to depose Andy August, for example. We didn't handle the case below, but I do not believe that he was deposed.

JUDGE CHUNG: Okay.

JUDGE FREEMAN: Did you mention the op-ed in your amended complaint as a basis for the First Amendment retaliation claim?

MR. KERWIN: Absolutely. And again, my time is up. Is it okay if I answer the question? I think it's a very unfair reading of the first amended complaint to say, as the District Court did, basically, we'll take matched sets of allegations. For the op-ed, the only thing that Professor De Piero says he suffered in terms of retaliation was not having his op-ed included in the News at (sic) Sutherland, right? That's not what the complaint says under any fair reading. And it should have been -- there should have been leave to amend granted, frankly. It wasn't.

JUDGE FREEMAN: So you didn't argue that in your brief to us that it was error to dismiss with prejudice?

MR. KERWIN: It is error to dismiss with prejudice. I do believe we did argue that. But in any event, it's not a fair reading of the first amended complaint to say -- again, on the standard of a 12(b)(6) motion, right, all charitable inferences need to be given to the complaint. It needs to be

Page 16

read in the light most favorable to the plaintiff, not the other way around.  So the complaint says Prof. De Piero engaged in a number of speech acts, and he suffered a bunch of retaliation.  One of the speech acts was the op-ed, right?  So I suppose one might say -- I'm sorry.  I'll withdraw that.  I do believe that it was preserved.  It's stated in the complaint.

JUDGE MATEY:  Thank you, Counsel.  We'll hear from you on rebuttal.

MR. KERWIN:  Thank you.

JUDGE MATEY:  Good morning.

ORAL ARGUMENT OF JAMES A. KELLER, ESQ.

ON BEHALF OF THE APPELLEES

MR. KELLER:  Good morning.  May it please the Court, James Keller on behalf of the Pennsylvania State University and all appellees.  They picked the wrong test case.  Appellant's briefing, and certainly the amicus brief that was filed, make clear that this is an attempt to force into a civil lawsuit anti-diversity, equity, and inclusion views, anti-diversity, equity, and inclusion polemic, and --

JUDGE MATEY:  What do you mean by polemic?

MR. KELLER:  Well, Your Honor, there is frequent phrasing throughout the briefing, at argument today, and certainly in the amicus brief suggesting that diversity, equity, and inclusion categorically is --

Page 17

JUDGE MATEY:  Where was that argued today, Counsel?

MR. KELLER:  Well, it was alluded to that any reference to race is somehow discriminatory against Zack De Piero.

JUDGE MATEY:  That's polemic in your characterization?  I mean, I don't want to spend much time on it --

MR. KELLER:  Yeah.  No, that's --

JUDGE MATEY:  -- but this is how you -- hold on.  This is how you --

MR. KELLER:  That's fair, Your Honor.  I will --

JUDGE MATEY:  Counsel, if I speak, you listen.  Okay?

MR. KELLER:  Yes, Your Honor.

JUDGE MATEY:  This is how you've chosen to open.  So I'm curious what representations counsel made today that you're characterizing as polemic.

MR. KELLER:  I would --

JUDGE MATEY:  If you're saying there's an inference, but I'm missing what specific arguments were made.

MR. KELLER:  I would break that down into two pieces, Your Honor.  I appreciate the question.  I believe that the amicus brief is a polemic.  I believe that appellant's briefing suggests that anything related to diversity, equity, and inclusion is improper.

JUDGE MATEY:  Can we talk about the standards for adverse employment action?  You seem to contend that the

Page 18

District Court properly viewed this by saying Penn State did not materially changed the terms and conditions of his employment and noted that he was never terminated, and that there were no changes to his job responsibilities or benefits.  Why is that the right standard?

MR. KELLER:  Well, Your Honor, the standard for the hostile environment claim is even if there is a hostile environment, does it unreasonably interfere with his work performance?  And there is case law.  And in fact, in his summary judgment briefing, appellant concedes that a performance expectations memo standing alone does not suffice to unreasonably interfere with work performance.  There is other case law which we cite in our briefing that says a lower performance rating -- which was still fair to good; it wasn't unsatisfactory -- does not satisfy the standard for unreasonably interfering with work performance.  So then, we're left with, what is the impact even if there was a hostile environment?

JUDGE MATEY:  Was the letter a sanction under the university's policy?

MR. KELLER:  It was not, Your Honor.  I know the appellant says that it was.  But in that citation in the record, the citation is to sanctions for violations of AD91, which is a specific university policy, which, as Ms. Borges wrote in her letter, the university specifically found there was no violation of AD91.  So that's a specific description of

potential sanctions for an AD91 violation, which was not found in this case.

JUDGE CHUNG:  What about adverse in the retaliation context?  I mean, isn't the standard that it would just have to -- it has to -- it can't be something trivial.  It has to actually inflict a harm.  But it is different in that the standard is whether or not it would have basically a dissuasive effect on someone from engaging in protected conduct.

MR. KELLER:  Yes.  Whether a reasonable person in like circumstances would feel dissuaded from bringing forth their concerns.

JUDGE CHUNG:  Uh-huh.  And can you give your position on the letters per that standard?

MR. KELLER:  Well, a letter -- so a performance expectations letter, which is what it was -- it was not a performance improvement plan, it's not a sanction, he wasn't placed on probation, he didn't lose any wages compared to some of the other cases that are cited by appellant.  So if we were to accept that what happened in the October 18th meeting was protected speech as opposed to unprofessional conduct, which is what the university actually found, I am not aware of case law that says a single letter saying, hey, there were people in this meeting who across the board said they thought the appellant behaved unprofessionally, that such a letter is the kind of adverse action that would dissuade somebody from

Page 20

speaking up.

JUDGE CHUNG:  What about the May 22nd -- I mean, May 2022 evaluation?

MR. KELLER:  Yeah.  So the evaluation, it all ties together to the same event.  And this actually indirectly gets to a separate question that Judge Freeman asked about whether the op-ed was considered.  All of the action -- the letters, the performance evaluation -- it's all tied to the October 18th, 2021 meeting.  I mean, it says as much.  So in the May performance evaluation, appellant received marks of very good to excellent across the board except in service, where the rating was fair to good, which is still a satisfactory rating.  And that was tied to the determination that he had engaged in unprofessional conduct in October 2021.  Would that dissuade a reasonable person from engaging in unprofessional conduct?  I would hope so.  They don't want people to engage in unprofessional conduct.  Would it dissuade someone from speaking up and engaging in what appellant believes to be protected speech?  The case law suggests that a performance evaluation is not sufficient to rise to the level of an adverse action that would dissuade someone from engaging in that behavior.

Had he been terminated or put on probation, that might be different, Your Honor.  But in fact, he received a raise.  After all of this happened, he received a raise.  Appellant was

Page 21

on a year-to-year contract.  He was given a new contract.  They wanted him back.  They gave him a full case load.  He left at the last minute, requiring the university to hire other people to cover his courses for a job where he made more money.  That's what happened.

JUDGE CHUNG:  Can I ask you, your briefing focuses a lot on the context of this being scholars debating scholarship, specifically that meeting.  There is some evidence in the record; for instance, the email exchange.  So I mean, I get your point in that; that people can have different views on the scholarship in their field, and that that's not necessarily any sort of viewpoint or racial discrimination.  But in the exchange regarding the plaintiff's planned training, there does seem to be some insistence that he connect his training to the scholarship.  And that does have more of a feel of he either needs to adopt that, or that is sort of opposition to that, or a desire not to engage in that is viewed askance.  Can you address what inferences can be read from that email, both as to the First Amendment and the Title VII claim?

MR. KELLER:  Your Honor, so these weren't mandatory professional training sessions.  I know that is appellant's view.  They were professional development sessions.  The fact that they weren't mandatory is supported by other witnesses' multiple declarations.  Appellant's own testimony when you actually read it, he says, well, I felt like I should go.

Page 22

Were there other people who didn't go?

Yeah, there were lots of other people who didn't go, but most of them were tenured.

Well, how about this gentleman named Jimmy Pack, who was not tenured?

Well, he didn't go.

How do we know that there weren't repercussions from not going?  Because appellant, on multiple occasions, didn't go.  And when he talks about his concerns with his performance review, none of those were about you you didn't show up to these sessions.  So one, I don't believe they were mandatory sessions.  But two, the discussion at the time -- and the point in time in history, I really do think does matter.  And we can't just pretend that these discussions are happening in the abstract.  These were discussions happening in 2020 and 2021, we're in the middle of a global pandemic, emotions are high, George Floyd had been murdered, and there were discussions about race happening all around the country.  And so these are teachers of writing.  And there are discussions happening as to how we could perhaps consider race when we're teaching writing.

JUDGE MATEY:  It seems a lot of your arguments walk away from the mandatory structure and into the voluntary nature, and away from the personal interactions of Penn State's employees into the academic realm.  But that's inconsistent with your opposition to the First Amendment claim.  And it's

Page 23

hard for me to understand how this isn't then all a jury question as to, well, look at the facts, look at the recordings, figure out what was reasonably said and what was part of debate versus what was personally directed that might have supported the kinds of performance review you're talking about. In other words, I don't understand the consistency between those two views. It seems that either it's a jury question or it's not. And it sounds like you're saying it is a jury question. Reasonable people can say what was important to the academic dialog on campus at this time. If so, why wouldn't that be a fact question?

MR. KELLER: Well, Your Honor, because the nature of the claim as pled in the complaint when we're talking about what Dr. De Piero said during the meeting, his focus is on -- and this is pled. It's paragraphs, I think, 92 through 95 of the amended complaint. "How is this not about me? I feel uncomfortable. I am concerned." All of the content that he -- so --

JUDGE MATEY: But to your point, the conversation isn't about scheduling of class time or the emergency preparedness functions for a snowstorm. It's a conversation about topics of public interest on an academic campus that as far as I can tell -- and I don't think you disagree that the literature that's being promoted -- is specific to Dr. De Pietro's (sic) status. And so why is that -- I mean, again, I

Page 24

understand how you're trying to take the comment of saying, well, this is all about him.  His argument is, well, no, it was about me as a category, as a class, as a race.  It sounds like a fact question, doesn't it?  Who do you credit there?

MR. KELLER:  Your Honor, I guess, two thoughts on that.  So one, there is a second piece to the First Amendment claim.  And that is that there had to be some sort of adverse action tied to the discussion.  And for reasons I've already articulated, I don't believe there's an adequate pleading or facts that have been developed to show that there was an adverse action.  So I guess that's one thought.  A second thought is that the decisions that were made were made based on unprofessional conduct; not the content of appellant's speech, his conduct, the way he behaved towards his colleagues.  And I know that appellant will say and does say, yeah, but listen to the recording.  If you listen to the recording, how could you think that I behaved in an inappropriate way or that I raised my voice?  But the reality is, at the time Penn State was evaluating concerns about appellant's conduct, they didn't have a recording.  Do you know why?  Because appellant surreptitiously recorded it, and probably didn't want people to know he had it.  So when Carmen Borges is interviewing people and saying, hey, what happened in that meeting?  And they're all saying he was really unprofessional, I was uncomfortable, that's what Penn State had to go with in making a decision

Page 25

about his behavior; not the content of his speech, his behavior.

JUDGE CHUNG:  Do you think there was a Cat's Paw Theory pled?

MR. KELLER:  I do not, Your Honor.

JUDGE CHUNG:  And you also argued that the Title VII retaliation claim was not properly pled.  Does that matter, given your ability to brief the merits extensively before the District Court?

MR. KELLER:  Thank you for that question, Your Honor. So we don't -- we -- the appellees don't believe the Title VII claim was adequately pled because there were hostile environment claim counts.  Within those counts, the word "retaliation" was mentioned, but it was mentioned as a type of the hostile environment, right?  So usually, as Your Honor is aware, if you're going to have a separate hostile environment count tied to retaliation, you plead it as such.  That's not how it was pled.  Ultimately, Your Honor, I don't think it does matter because those issues were fully developed through the record.  And Chief Judge Beetlestone evaluated the evidence. And so I still don't think they were properly pled or preserved.  But we fully briefed them, and I think all the evidence there is to have has been gathered at this point.

JUDGE MATEY:  Do you maintain that the statements that are challenged are not matters of public concern under the

Page 26

tests for speech in the First Amendment?

MR. KELLER:  I do, Your Honor.  I do because, again, really it is limited to the speech that leads to an alleged adverse impact, which is the only speech that could lead to a viable claim is limited to that October 18th meeting.  And even if we accept that it's speech and not conduct -- which we do not accept -- but it's speech and not conduct, the speech was, I'm really uncomfortable.  I'm not sure how to react.  If Dr. De Piero had gone out into the common green area and spoken about his views on race or race relations, or teaching and race relations to the campus at large, that would be different.

JUDGE MATEY:  You said earlier that this entire period needs to be understood in the context of the events that were going on, both on campus and elsewhere.  Does that apply to Dr. De Pietro's (sic) statements as well?

MR. KELLER:  I think that's fair, Your Honor.  Yes, there were -- I don't think that changes whether statements are protected or not, and the law doesn't change.  But in evaluating whether these were mandatory, discriminatory, not just training sessions, but conversion sessions -- which is what you might take away when you read appellant's briefing -- versus there are lots of things happening in society right now around race.  We teach students.  Let's discuss.  And people could disagree.  No one's saying people couldn't disagree. What the university concluded is you can't disagree in a way

Page 27

that's unprofessional.  And that conduct is worthy of a letter in your file, the result of which is you get a raise.  That's the harm.  There was a letter in his file, and he got a raise.

JUDGE MATEY:  Thank you, Counsel.

MR. KELLER:  Thank you.

JUDGE MATEY:  Mr. Kerwin?

ORAL REBUTTAL ARGUMENT OF JAMES L. KERWIN, ESQ.

ON BEHALF OF THE APPELLANT

MR. KERWIN:  Thank you, Your Honor.  I guess I would just start with one quick framing that involves what exactly it is that professor De Piero is challenging in terms of policy. Prof. De Piero doesn't take the position that training at a public university that suggests that teachers should take into account the race of their students in terms of basically, everybody needs help sometimes realizing that you might not get where everybody is coming from.  They come from different backgrounds than you.  You come from different backgrounds from them.  You should take that sort of thing into account, which is the way that counsel just described what the thrust was of what was happening in these professional development meetings. If that really was something -- if a jury were required to find that, I think that I can say right now, I don't think we would have a hostile work environment claim.  But that's not what a jury is going to be required to find, given the evidence in this record.  In fact, we think it's very compelling that very

different messages were being sent to white professors at Penn State University; not just, be sensitive to your students, but white teachers are a problem, and that there's nothing you can do about it short of not being a teacher. I mean, I guess that's one response to it, which actually is the overall thrust of the messages that are being sent by Penn State University to those members of its faculty that are of a certain race.

JUDGE CHUNG: I want to tease that out a little bit because it could be said that the scholarship is positing that.

MR. KERWIN: Yes.

JUDGE CHUNG: And it's another thing to say that PSU, by circulating that, is adopting that view. And so you seem to be -- what I take from your briefing and your arguments today is the reason that you say PSU is, in fact, adopting that viewpoint is because of the mandatory nature, I guess, and the fact that there's no sort of, like, solution offered.

MR. KERWIN: Thank you for that question, Your Honor. That is a fantastic question. It's much more than that, Your Honor. All right. So again, the point is, what will a white employee in a professor's position reasonably take to be the message from PSU? It's not just the scholarship. There's an affirmative action policy at the university that says explicitly, we want to change the percentage of our employees who are white, right? Liliana Naydan is on a DEI committee that issues a report that we cite in our brief that's in the

Page 29

record that says very explicitly, we want the university to adopt quotas based on race for professor hiring, right?  If any employee raises objections to this, they're accused of microaggressions.  All of these things taken together, again, it's not that we would like to encourage you to help your students.  When Prof. De Piero asks questions during the training session on white instructors confront white privilege is, can you give me some specific examples of what I could do in my classroom to actually overcome the problem that you've identified?  And there is no answer to that short of one of his colleagues actually comes out and says it.  Well, we might want to start -- yes.

JUDGE CHUNG:  Yeah, I've heard it and I've read the transcript as well, but -- or made a transcript.  But I'm interested in, but why is that a key factor?  How does that convert it into being hostile instead of a discussion about the scholarship, the failure to give a solution?  Does that mean it's, like, PSU adopted -- I'm just trying to understand why not answering that question converts it from scholarly debate into --

MR. KERWIN:  So if there's no answer to that question of what a white professor can do in a classroom, the answer is to not be in the classroom.  That's the only remaining answer that there is.  And given that there's affirmative action policies, these explicit calls for quotas, and all the other

Page 30

evidence in the record, the point is, if you're a white professor, what are you supposed to take away from that?  My standing in this university is hanging by a thread, right, because of what's going on with the racial reckoning.  It's being adopted here.  That is the point of the -- I want to get a little bit away from the word "hostile."  It's discriminatory.  Some of your employees are made to feel that your chances of, like, continuing in this career are pretty slim.  Some of your employees are, like, come on, bring it on.  You can go a long way, because of their race.  That's the issue.  Thank you.

MR. KERWIN:  Thank you, Counsel.

Would the clerk please direct the parties to prepare a transcript in this matter with the costs to be split.  Otherwise, the case is submitted.  Thank you.

(Whereupon the proceedings were concluded.)

Page 31

C E R T I F I C A T I O N

I, Kristin Gambel, certify that the foregoing transcript is a true and accurate record of the proceedings.

*Kristin Gambel*

_____

Kristin Gambel

Date:  March 25, 2026

**[12 - anti]**                                    Page 1

| 1 |
|---|
| **12**  15:24 |
| **16**  4:5 |
| **1735**  3:12 |
| **17th**  6:17,25 |
| **18**  1:13 |
| **18th**  19:19 20:9 |
| 26:5 |
| **19103**  3:14 |

| 2 |
|---|
| **2020**  7:4,7,20 |
| 22:15 |
| **2021**  8:2,11 |
| 20:9,14 22:15 |
| **2022**  20:3 |
| **2026**  1:13 2:3 |
| 31:16 |
| **22nd**  20:2 |
| **25**  31:16 |
| **25-1952**  1:7 5:3 |
| **2596**  3:6 |
| **27**  4:3 |

| 3 |
|---|
| **30**  2:3 |
| **3400**  3:13 |

| 5 |
|---|
| **5**  4:3 |

| 6 |
|---|
| **6**  15:24 |

| 8 |
|---|
| **80227**  3:7 |

| 9 |
|---|
| **92**  23:15 |
| **95**  23:15 |
| **9:00**  1:14 |

| a |
|---|
| **ability**  6:1 25:8 |
| **absolutely**  15:9 |
| **abstract**  22:15 |
| **abstractly**  11:9 |
| **academic**  22:24 |
| 23:10,22 |
| **accept**  19:19 |
| 26:6,7 |
| **accident**  14:18 |
| **accomplishm...** |
| 6:8,11 |
| **account**  27:14 |
| 27:18 |
| **accurate**  31:5 |
| **accused**  8:1 |
| 29:3 |
| **action**  8:13 |
| 9:15 10:6 |
| 11:21 12:15 |
| 13:3 17:25 |
| 19:25 20:7,21 |
| 24:8,11 28:22 |
| 29:24 |
| **actions**  9:1 |
| 10:22 11:2,8 |

**acts**  8:21 12:13
16:3,4
**actually**  19:6
19:21 20:5
21:25 28:5
29:9,11
**ad91**  18:22,25
19:1
**additional**
13:21
**address**  9:2
10:24 12:2
21:18
**addressed**
10:25
**adequate**  24:9
**adequately**
25:12
**adhering**  11:1
**administrators**
13:4 14:19
**adopt**  21:16
29:2
**adopted**  29:18
30:5
**adopting**  28:12
28:14
**adverse**  9:1,13
9:15 10:6,6,22
11:2,8 17:25
19:3,25 20:20
24:7,11 26:4
**affirmative**
8:13 12:15

13:3 28:22
29:24
**al**  1:10
**allegations**
7:21,23 15:13
**alleged**  26:3
**alleging**  10:22
**allow**  7:20
**alluded**  17:2
**amend**  15:17
**amended**  15:7
15:11,23 23:16
**amendment**
7:17 8:20,24
13:14 14:4
15:7 21:19
22:25 24:6
26:1
**america**  5:15
12:21
**amicus**  16:17
16:24 17:21
**analyzed**  10:6
**andy**  14:18
15:3
**annual**  11:3
**answer**  13:24
14:7 15:10
29:10,21,22,23
**answered**  8:18
**answering**
29:19
**anti**  8:14 16:19
16:19

**[anticipated - cat's]** Page 2

**anticipated** 13:23
**appeals** 1:2
**appear** 6:12
**appearances** 3:2
**appellant** 1:7 3:3 4:4 5:8,13 18:10,21 19:18 19:24 20:10,18 20:25 22:8 24:15,20 27:8
**appellant's** 16:16 17:21 21:21,24 24:13 24:19 26:21
**appellees** 1:11 3:9 4:5 10:14 16:13,16 25:11
**appendix** 14:16
**apply** 26:14
**appreciate** 17:20
**april** 8:2
**area** 9:25 26:9
**argue** 8:17 11:17 13:15 15:19,22
**argued** 11:16 11:20,23 17:1 25:6
**argument** 4:2 5:12 10:20 16:12,23 24:2

27:7
**arguments** 5:2 13:22 17:18 22:21 28:13
**articulated** 24:9
**arts** 8:3,4
**askance** 21:17
**asked** 7:17 20:6
**asking** 6:18,21 10:3 13:2
**asks** 29:6
**attempt** 16:18
**august** 14:18 15:3
**aware** 19:21 25:16

**b**

**b** 1:20 15:24
**back** 7:7 14:23 21:2
**backgrounds** 27:17,17
**baer** 8:3
**barely** 6:10
**based** 5:18,20 6:6 7:2 9:4 11:1,9 24:12 29:2
**basically** 13:5 13:17 15:12 19:7 27:14

**basis** 6:16,23 15:7
**beetlestone** 25:20
**beginning** 10:5
**behalf** 4:4,5 5:13 16:13,15 27:8
**behaved** 19:24 24:14,17
**behavior** 20:22 25:1,2
**believe** 12:16 12:17 15:4,22 16:6 17:20,21 22:11 24:9 25:11
**believed** 7:10
**believes** 20:18
**benefits** 18:4
**better** 8:8
**biased** 7:24
**bit** 13:14 28:8 30:6
**board** 19:23 20:11
**borges** 11:19 12:16 18:23 24:22
**break** 17:19
**brief** 10:14 15:19 16:17,24 17:21 25:8 28:25

**briefed** 11:23 25:22
**briefing** 16:17 16:23 17:21 18:10,13 21:6 26:21 28:13
**briefly** 9:24
**bring** 30:9
**bringing** 19:10
**brought** 7:20 8:5
**bunch** 7:8 16:3
**burlington** 11:1

**c**

**c** 4:1 5:1 31:2,2
**calls** 29:25
**campus** 23:10 23:22 26:11,14
**career** 30:8
**careers** 6:2
**carmen** 12:15 24:22
**carries** 11:21
**case** 1:6 5:3 6:3 10:15 15:4 16:16 18:9,12 19:2,21 20:19 21:2 30:15
**cases** 10:5 19:18
**cat's** 11:16,20 12:12 25:3

**[categorically - continuing]** Page 3

**categorically** 16:25
**category** 24:3
**causation** 11:13 12:9 14:12
**certain** 28:7
**certainly** 16:17 16:23
**certify** 31:4
**challenged** 25:25
**challenging** 27:11
**chances** 30:8
**change** 26:18 28:23
**changed** 18:2
**changes** 12:10 18:4 26:17
**characterizati...** 17:5
**characterizing** 17:15
**charitable** 15:24
**chief** 25:20
**chosen** 6:1 17:13
**chung** 1:21 7:14 9:13,15 9:18,22 10:11 11:13,25 12:2 12:5 13:13

14:10,25 15:5 19:3,12 20:2 21:6 25:3,6 28:8,11 29:13
**circuit** 1:3,22
**circulated** 14:21
**circulating** 28:12
**circumstances** 19:10
**citation** 18:21 18:22
**cite** 18:12 28:25
**cited** 19:18
**civil** 16:18
**claim** 7:2,13,18 8:9,20,20,25 10:4,7 14:4 15:8 18:7 21:19 22:25 23:13 24:7 25:7,12,13 26:5 27:23
**claims** 6:16,22 6:24 14:5
**class** 23:20 24:3
**classroom** 29:9 29:22,23
**clear** 7:14 10:4 10:14 13:6 16:18

**clearly** 7:9
**clerk** 30:13
**client** 6:20
**colleagues** 13:15 24:14 29:11
**color** 8:2 13:12
**come** 27:16,17 30:9
**comes** 29:11
**coming** 27:16
**comment** 24:1
**committee** 28:24
**common** 26:9
**compared** 19:17
**comparison** 10:11
**compelling** 27:25
**complaint** 7:6 8:12 13:8 14:20 15:7,11 15:16,23,25 16:2,7 23:13 23:16
**complaints** 11:11
**concedes** 18:10
**concern** 8:23 14:6,9,11 25:25

**concerned** 10:8 23:17
**concerns** 19:11 22:9 24:19
**concluded** 26:25 30:16
**concrete** 5:20
**conditions** 5:16 5:20 10:9 18:2
**conduct** 7:15 19:8,20 20:14 20:15,17 24:13 24:14,19 26:6 26:7 27:1
**conducted** 13:18
**confront** 29:7
**connect** 21:14
**consider** 13:15 22:20
**considered** 20:7
**consistency** 23:6
**contend** 17:25
**content** 13:10 23:17 24:13 25:1
**context** 11:8 19:4 21:7 26:13
**continuing** 30:8

**contours** 12:3
**contract** 21:1,1
**conversation** 23:19,21
**conversion** 26:20
**convert** 29:16
**converts** 29:19
**cordiality** 9:11
**correct** 9:17 15:2
**costs** 30:14
**counsel** 10:14 16:8 17:1,11 17:14 27:4,19 30:12
**count** 25:17
**country** 12:25 22:18
**counts** 25:13 25:13
**courses** 21:4
**court** 1:2 9:2 10:1,5,15,16,18 10:24 15:12 16:14 18:1 25:9
**courtroom** 5:9
**courts** 9:25
**cover** 21:4
**credit** 24:4
**criticized** 7:25
**criticizing** 8:1

**curious** 17:14

**d**

**d** 5:1
**date** 31:16
**day** 14:19
**de** 1:6 5:3,8,8 7:7,20 8:21 9:3 11:3,12 12:19 12:25 13:6 14:14,21 15:13 16:2 17:3 23:14,24 26:9 26:15 27:11,12 29:6
**debate** 23:4 29:19
**debating** 21:7
**december** 9:16 9:22 10:23 11:2,19
**decide** 5:19
**decision** 24:25
**decisions** 24:12
**declarations** 21:24
**defendant** 11:14
**defendants** 12:9
**dei** 28:24
**dellicarpini** 1:10

**department** 8:4
**depends** 14:3
**depose** 15:3
**deposed** 15:4
**described** 27:19
**description** 18:25
**desire** 21:17
**deter** 11:10
**determination** 20:13
**developed** 24:10 25:19
**development** 7:24 8:16 21:22 27:20
**dialog** 23:10
**difference** 10:21
**different** 13:22 13:23 19:6 20:24 21:10 26:11 27:16,17 28:1
**direct** 30:13
**directed** 23:4
**disagree** 23:23 26:24,24,25
**disciplinary** 9:10 14:15
**discovery** 13:15,16,18,19 13:22,23 14:7

14:8,13,17,24 14:25
**discrete** 8:21
**discrimination** 6:4 7:3,11 13:8 21:12
**discriminatory** 11:21 17:3 26:19 30:7
**discuss** 26:23
**discussion** 22:12 24:8 29:16
**discussions** 22:14,15,17,19
**dismiss** 13:14 13:21 14:5 15:20,21
**dismissed** 14:5
**dispute** 8:22
**dissuade** 19:25 20:14,17,21
**dissuaded** 19:10
**dissuasive** 10:11 19:7
**district** 9:2,25 10:1,15,24 15:12 18:1 25:9
**diversity** 16:19 16:19,24 17:22
**divides** 6:6

**dr** 23:14,24 26:8,14

**e**

**e** 1:20,20 4:1 5:1,1 31:2
**earlier** 26:12
**easier** 12:7
**ed** 14:13,22 15:6,13,15 16:4 20:7
**effect** 19:8
**either** 21:15 23:7
**element** 14:3,6
**else's** 11:17
**email** 14:21 21:9,18
**emails** 14:17
**emergency** 23:20
**emotions** 22:16
**employee** 28:20 29:3
**employees** 5:24 6:6 22:24 28:23 30:7,9
**employer** 6:6
**employers** 5:15 5:21
**employment** 5:17,21 9:1 10:9 17:25 18:2

**encourage** 29:5
**enforcing** 7:22
**engage** 20:16 21:17
**engaged** 8:22 16:2 20:13
**engaging** 19:8 20:15,18,21
**entire** 8:4 26:12
**environment** 5:23 6:5 7:19 18:7,7,17 25:13,15,16 27:23
**equity** 16:19,20 16:24 17:22
**error** 10:4 15:20,21
**esq** 3:4,10 4:3,5 5:12 16:12 27:7
**essence** 11:6
**et** 1:10
**evaluated** 25:20
**evaluating** 24:19 26:19
**evaluation** 20:3 20:4,8,10,20
**evaluations** 7:24
**event** 15:22 20:5

**events** 26:13
**everybody** 27:15,16
**evidence** 21:8 25:20,23 27:24 30:1
**ewing** 3:11
**exactly** 27:10
**example** 6:3,5 15:3
**examples** 29:8
**excellent** 20:11
**except** 20:11
**exchange** 21:9 21:13
**expect** 7:13
**expectations** 18:10 19:15
**explicit** 29:25
**explicitly** 28:23 29:1
**extensively** 25:8

**f**

**f** 1:20 31:2
**fact** 10:2 14:15 18:9 20:24 21:22 23:11 24:4 27:25 28:14,16
**factor** 29:15
**facts** 12:8 23:2 24:10

**faculty** 28:7
**failed** 10:24
**failure** 29:17
**fair** 15:16,23 17:10 18:14 20:12 26:16
**famous** 8:2
**fantastic** 28:18
**far** 11:14 13:16 23:23
**favor** 13:19
**favorable** 16:1
**feel** 19:10 21:15 23:16 30:7
**feeling** 5:25
**felt** 21:25
**field** 21:11
**figure** 23:3
**file** 27:2,3
**filed** 7:6 8:11 16:17
**find** 8:17 27:21 27:24
**finding** 9:10 10:2 12:8
**fine** 7:19 12:2
**first** 6:22 7:13 7:17 8:20,24 9:13,15,22 13:14 14:4 15:7,11,23 21:19 22:25 24:6 26:1

| | | | |
|---|---|---|---|
| **five** 11:4,4 | **gentleman** 22:4 | **h** | **honor** 5:6,14 |
| **floyd** 22:17 | **george** 22:17 | **half** 12:18 | 6:18 7:1 11:22 |
| **focus** 8:7 23:14 | **give** 6:3 19:12 | **handle** 15:3 | 13:5 14:3,9 |
| **focuses** 21:6 | 29:8,17 | **hanging** 30:3 | 16:22 17:10,12 |
| **focusing** 9:18 | **given** 11:22 | **happened** 7:5 | 17:20 18:6,20 |
| **force** 16:18 | 13:18 15:25 | 10:1 11:7,9 | 20:24 21:20 |
| **foregoing** 31:4 | 21:1 25:8 | 19:19 20:25 | 23:12 24:5 |
| **formal** 8:12 | 27:24 29:24 | 21:5 24:23 | 25:5,10,15,18 |
| **forming** 6:16 | **global** 22:16 | **happening** | 26:2,16 27:9 |
| **forth** 14:23 | **go** 5:24 6:9 | 22:14,15,18,19 | 28:17,19 |
| 19:10 | 7:13,21 8:22 | 26:22 27:20 | **hope** 8:18 |
| **found** 9:6 | 21:25 22:1,2,6 | **happy** 6:7 | 20:16 |
| 12:11 13:9 | 22:9 24:25 | **harassed** 8:10 | **hostile** 7:18 |
| 18:24 19:1,21 | 30:10 | **hard** 23:1 | 18:7,7,17 |
| **foundation** 3:5 | **going** 5:18,19 | **harder** 7:22 | 25:12,15,16 |
| 5:7 | 6:9 7:8,12 | **harm** 19:6 27:3 | 27:23 29:16 |
| **four** 5:10 11:5 | 12:14,20,22 | **head** 8:3,12 9:9 | 30:6 |
| **framing** 27:10 | 14:6 22:8 | 12:15 13:3 | **hour** 12:18 |
| **frankly** 15:18 | 25:16 26:14 | **hear** 10:21 16:8 | **huh** 19:12 |
| **freeman** 1:21 | 27:24 30:4 | **heard** 6:13 | **humanities** 8:4 |
| 9:20 10:20 | **good** 5:2 14:2 | 29:13 | 8:5 |
| 15:6,19 20:6 | 16:11,14 18:14 | **help** 27:15 29:5 | **hypothetical** |
| **frequent** 16:22 | 20:10,12 | **helping** 8:8 | 6:5 |
| **friederike** 8:3 | **grab** 7:12 | **hey** 14:21 | **i** |
| **full** 21:2 | **graded** 11:5 | 19:22 24:23 | **identified** |
| **fully** 25:19,22 | **granted** 5:11 | **high** 13:4 22:16 | 29:10 |
| **functions** 23:21 | 15:18 | **highest** 14:19 | **identity** 8:8 |
| **g** | **green** 26:9 | **hire** 5:18 21:3 | **immediate** 13:7 |
| **g** 5:1 | **ground** 10:17 | **hiring** 29:2 | **impact** 18:16 |
| **gambel** 2:1,2 | **grounds** 10:16 | **history** 22:13 | 26:4 |
| 31:4,10 | **group** 6:7,10 | **hold** 17:8 | **important** 9:8 |
| **gathered** 25:23 | **groups** 6:6 | **hon** 1:21 | 9:10 23:9 |
| | **guess** 24:5,11 | | |
| | 27:9 28:4,15 | | |

| | | | |
|---|---|---|---|
| **importantly** 8:9 | **instructors** 7:22 29:7 | 10:11,20,23 11:13,25 12:2 | 26:2,16 27:5 **kerwin** 3:4 4:3 |
| **impressed** 6:8 | **interactions** 22:23 | 12:5 13:13 14:1,10,25 | 5:5,6,6,12,14 6:18 7:1,16 9:3 |
| **improper** 17:23 | **interest** 23:22 | 15:5,6,19 16:8 | 9:14,17,19,21 |
| **improvement** 19:16 | **interested** 29:15 | 16:11,21 17:1 17:5,8,11,13,17 | 9:24 10:13 11:3,22 12:1,4 |
| **imputed** 11:16 | **interfere** 18:8 | 17:24 18:18 | 12:6 13:24 |
| **inappropriate** 24:17 | 18:11 | 19:3,12 20:2,6 21:6 22:21 | 14:2,11 15:2,9 15:21 16:10 |
| **inappropriately** 10:1 | **interfering** 18:15 | 23:19 25:3,6 25:20,24 26:12 | 27:6,7,9 28:10 28:17 29:21 |
| **included** 15:15 | **interviewing** 24:22 | 27:4,6 28:8,11 | 30:12 |
| **inclusion** 16:19 16:20,25 17:23 | **investigated** 9:3,5 | 29:13 **judges** 1:22 | **key** 29:15 **kind** 19:25 |
| **inconsistent** 22:24 | **involved** 12:12 13:4 14:14 | **judgment** 12:10 13:18 | **kinds** 6:14 11:11 23:5 |
| **incorrect** 11:1 | **involves** 27:10 | 18:9 | **knew** 14:14 |
| **indicated** 13:5 | **issue** 13:16 | **jumped** 7:17 | **know** 7:5 10:25 |
| **indirectly** 20:5 | 14:12 30:11 | **jury** 8:17 12:7 | 14:22 18:20 |
| **indiscernible** 10:12 | **issues** 8:8,13,21 25:19 28:25 | 12:8,11,23 23:1,7,9 27:21 | 21:21 22:7 24:15,20,22 |
| **individual** 11:11,14,14 | **items** 14:16 | 27:24 | **kristin** 2:1,2 |
| 12:12 | **j** | **jury's** 10:2 | 31:4,10 |
| **infer** 12:23 | **james** 3:4,10 | **k** | **l** |
| **inference** 17:17 | 4:3,5 5:6,12 | **k** 1:6 | **l** 3:4 4:3 5:12 |
| **inferences** 15:25 21:18 | 16:12,15 27:7 | **keller** 3:10 4:5 | 27:7 |
| **inflict** 19:6 | **jimmy** 22:4 | 16:12,14,15,22 | **lakewood** 3:7 |
| **insistence** 21:14 | **job** 18:4 21:4 | 17:2,7,10,12,16 17:19 18:6,20 | **landscape** 5:24 **large** 26:11 |
| **instance** 10:3 | **judge** 5:2,11 | 19:9,14 20:4 | **law** 10:4 18:9 |
| 11:18 14:13 | 6:14,22 7:14 | 21:20 23:12 | 18:12 19:21 |
| 21:9 | 8:25 9:13,15 9:18,20,20,22 | 24:5 25:5,10 | 20:19 26:18 |

| | | | |
|---|---|---|---|
| **lawsuit** 16:18 | **load** 21:2 | **materials** 15:1 | **members** 28:7 |
| **lead** 26:4 | **long** 6:9 12:18 | **matey** 1:21 5:2 | **memo** 18:11 |
| **leads** 26:3 | 30:10 | 5:11 6:14,22 | **mental** 5:23 |
| **leave** 15:17 | **look** 23:2,2 | 8:25 14:1 16:8 | **mention** 15:6 |
| **left** 18:16 21:2 | **lose** 19:17 | 16:11,21 17:1 | **mentioned** 8:10 |
| **legal** 3:5 5:7 | **lot** 9:12 21:7 | 17:5,8,11,13,17 | 25:14,14 |
| 10:20 | 22:21 | 17:24 18:18 | **merits** 25:8 |
| **letter** 9:16,22 | **lots** 22:2 26:22 | 22:21 23:19 | **message** 28:21 |
| 9:23 10:23 | **lower** 18:13 | 25:24 26:12 | **messages** 5:25 |
| 11:2,19 18:18 | **m** | 27:4,6 | 28:1,6 |
| 18:24 19:14,15 | | **matey's** 9:20 | **microaggress...** |
| 19:22,24 27:1 | **made** 17:14,18 | 10:23 | 13:10 |
| 27:3 | 21:4 24:12,12 | **matter** 14:5,8 | **microaggress...** |
| **letters** 19:13 | 29:14 30:7 | 14:11,15 22:13 | 7:9 9:4 29:4 |
| 20:7 | **main** 1:6 | 25:7,19 30:14 | **middle** 22:16 |
| **level** 13:4 14:19 | **maintain** 5:15 | **matters** 8:23 | **minute** 21:3 |
| 20:20 | 5:21 25:24 | 9:12 25:25 | **minutes** 5:10 |
| **lewis** 3:6 | **make** 10:13 | **mean** 10:25 | **missing** 17:18 |
| **liability** 12:5 | 12:3 16:17 | 11:3 12:14 | **misspoke** 14:9 |
| **light** 16:1 | **making** 24:25 | 13:8 16:21 | **moment** 9:1 |
| **liliana** 14:20 | **mandates** 7:22 | 17:6 19:4 20:2 | **money** 21:4 |
| 28:24 | **mandatory** | 20:9 21:9 | **morning** 5:2,3 |
| **limit** 6:10 | 21:20,23 22:11 | 23:25 28:4 | 16:11,14 |
| **limited** 26:3,5 | 22:22 26:19 | 29:17 | **motion** 13:14 |
| **line** 10:5 | 28:15 | **means** 5:17 | 13:17,20 14:4 |
| **listed** 9:5 | **march** 1:13 2:3 | **meeting** 6:17 | 15:24 |
| **listen** 17:11 | 31:16 | 6:25 8:3,11 | **motivation** |
| 24:15,16 | **margo** 1:10 | 12:18 19:19,23 | 13:7 |
| **listing** 7:14 | **market** 3:12 | 20:9 21:8 | **motive** 11:15 |
| **literature** | **marks** 20:10 | 23:14 24:23 | 11:17,19,21 |
| 23:24 | **mask** 7:22 | 26:5 | 12:13 13:2 |
| **little** 7:12 13:13 | **matched** 15:12 | **meetings** 7:24 | **mountain** 3:5 |
| 28:8 30:6 | **materially** 18:2 | 8:12,16 27:20 | 5:7 |

**multiple** 21:24
  22:8
**murdered**
  22:17

**n**

**n** 4:1,1 5:1 31:2
**name** 12:17
**named** 22:4
**nature** 22:23
  23:12 28:15
**naydan** 7:6
  11:18 28:24
**naydan's** 14:20
**necessarily**
  21:11
**need** 8:23 14:8
  14:24 15:25
**needed** 13:22
**needs** 14:7
  15:25 21:16
  26:13 27:15
**neutrality** 5:16
  5:22
**never** 11:7 18:3
**new** 21:1
**news** 15:15
**nontenured** 9:8
**nonwhite** 7:21
  7:25
**note** 7:12
**noted** 18:3
**number** 5:3 7:3
  16:3

**o**

**o** 1:20 4:1 5:1
  31:2
**objections**
  12:19 29:3
**obvious** 6:3
**obviously** 5:17
  8:19
**occasions** 22:8
**october** 6:17,25
  19:19 20:8,14
  26:5
**offered** 28:16
**office** 8:13 9:10
  12:15 13:3
**oh** 9:3
**okay** 9:20
  11:25 14:10
  15:5,10 17:11
**old** 10:7
**one's** 26:24
**ones** 9:5
**op** 14:13,22
  15:6,13,15
  16:4 20:7
**open** 17:13
**opposed** 19:20
**opposing** 7:10
**opposition** 7:2
  21:16 22:25
**oral** 4:2 5:12
  16:12 27:7

**order** 8:24
**outcome** 12:10
**overall** 28:5
**overcome** 29:9
**overlap** 8:19
**overrule** 10:19
**overruled**
  10:15,17
**own** 11:15
  21:24

**p**

**p** 5:1
**pa** 3:14
**pack** 22:4
**page** 4:2
**pandemic**
  22:16
**paragraphs**
  23:15
**parenthetical**
  10:15
**part** 6:19 23:4
**particular** 10:3
**parties** 30:13
**paw** 11:16,20
  12:12 25:3
**pay** 5:19
**penn** 6:19 8:5
  12:20,24 18:1
  22:23 24:18,25
  28:1,6
**pennsylvania**
  1:9 5:4 16:15

**people** 8:8 13:3
  19:22 20:16
  21:3,10 22:1,2
  23:9 24:21,22
  26:23,24
**percentage**
  28:23
**performance**
  11:4 18:8,10
  18:12,13,16
  19:14,16 20:8
  20:10,19 22:9
  23:5
**period** 26:12
**person** 19:9
  20:15
**personal** 22:23
**personally** 23:4
**phase** 14:5
**philadelphia**
  3:14
**phra** 11:15
**phrasing** 16:23
**picked** 16:16
**piece** 24:6
**pieces** 17:19
**piero** 1:6 5:3,8
  5:8 7:8,20 8:22
  9:3 11:12
  12:19 14:14,21
  15:14 16:2
  17:4 23:14
  26:9 27:11,12
  29:6

**[piero's - raise]**

**piero's** 11:3 13:1,6
**pietro's** 23:25 26:15
**placed** 19:17
**plaintiff** 5:7 16:1
**plaintiff's** 21:13
**plan** 19:16
**planned** 21:13
**plead** 25:17
**pleading** 24:9
**please** 14:1 16:14 30:13
**pled** 11:20 23:13,15 25:4 25:7,12,18,21
**point** 10:13 21:10 22:12 23:19 25:23 28:19 30:1,5
**points** 10:14
**polemic** 16:20 16:21 17:5,15 17:21
**policies** 29:25
**policy** 18:19,23 27:11 28:22
**positing** 28:9
**position** 19:12 27:12 28:20
**posture** 13:14 13:21

**potential** 19:1
**prejudice** 15:20,21
**prepare** 30:13
**prepared** 11:23
**preparedness** 23:21
**prerequisite** 8:24
**preserved** 16:6 25:22
**pretend** 22:14
**pretty** 13:6 30:8
**privilege** 29:7
**probably** 14:18 24:21
**probation** 19:17 20:23
**problem** 28:3 29:9
**proceedings** 30:16 31:5
**process** 14:15
**produce** 14:25
**produced** 14:17
**prof** 7:6,19 8:21 9:3 11:3 11:11 12:19,25 13:6 14:13,20 16:2 27:12 29:6

**professional** 7:23 8:16 9:6,7 9:11 21:21,22 27:20
**professor** 5:8 9:8 15:13 27:11 29:2,22 30:2
**professor's** 28:20
**professors** 7:25 28:1
**progress** 6:1
**prohibition** 6:4
**promoted** 23:24
**pronounce** 12:16
**properly** 18:1 25:7,21
**protected** 6:20 7:10,15 8:14 8:17 19:8,20 20:19 26:18
**provision** 8:15
**psu** 11:16 14:19 28:11,14 28:21 29:18
**public** 8:23 9:9 14:6,8,11 23:22 25:25 27:13
**published** 14:14,22

**purposes** 10:9
**put** 20:23

**q**

**question** 7:16 8:18 10:24 11:7 12:7 13:25 14:2 15:10 17:20 20:6 23:2,8,9 23:11 24:4 25:10 28:17,18 29:19,21
**questioning** 13:11
**questions** 9:20 29:6
**quick** 27:10
**quite** 7:3
**quotas** 29:2,25
**quote** 8:1

**r**

**r** 1:20 5:1 31:2
**race** 5:15,18,20 5:21 6:7 17:3 22:18,20 24:3 26:10,10,10,23 27:14 28:7 29:2 30:10
**racial** 21:12 30:4
**raise** 20:24,25 27:2,3

**raised** 7:23 8:13 24:17
**raises** 29:3
**raising** 11:11
**rather** 7:18
**rating** 18:13 20:12,12
**react** 26:8
**read** 16:1 21:18 21:25 26:21 29:13
**reading** 15:11 15:16,23
**reality** 24:18
**realizing** 27:15
**really** 14:12 22:13 24:24 26:3,8 27:21
**realm** 22:24
**reason** 28:14
**reasonable** 19:9 20:15 23:9
**reasonably** 5:25 7:10 11:10 12:23 23:3 28:20
**reasons** 13:9 24:8
**rebuttal** 5:10 16:9 27:7
**received** 20:10 20:24,25

**receiving** 5:25
**reckoning** 30:4
**record** 7:4 14:16 18:22 21:9 25:20 27:25 29:1 30:1 31:5
**recorded** 24:21
**recording** 12:18 24:16,16 24:20
**recordings** 23:3
**refer** 7:8
**reference** 17:3
**referred** 5:22
**referring** 6:15 6:23
**regarding** 21:13
**related** 17:22
**relations** 26:10 26:11
**relied** 10:5
**remaining** 29:23
**repercussions** 22:7
**reply** 13:20
**report** 28:25
**represent** 5:7
**representations** 17:14

**required** 5:15 5:21 27:21,24
**requiring** 21:3
**reserved** 5:9
**respect** 5:16,22 12:9
**response** 28:5
**responsibilities** 18:4
**rest** 12:25
**result** 27:2
**retaliation** 6:16 6:19,22,24 7:2 7:18 8:9,14,20 8:25 10:4,7,9 15:8,14 16:4 19:3 25:7,14 25:17
**retaliatory** 11:15,17,19 12:13,13 13:2 13:7
**review** 22:10 23:5
**reviewing** 14:20
**reviews** 11:4
**right** 6:24 7:16 8:23 9:4,8 10:16 12:11 13:1,2,8 14:4 15:15,24 16:4 18:5 25:15 26:22 27:22

28:19,24 29:2 30:3
**rise** 20:20
**role** 10:2

**s**

**s** 2:1 3:6 4:1 5:1
**sabira** 5:9
**sanction** 18:18 19:16
**sanctions** 18:22 19:1
**satisfactory** 20:12
**satisfy** 8:24 18:15
**saul** 3:11
**saying** 10:25 17:17 18:1 19:22 23:8 24:1,23,24 26:24
**says** 6:7,10 13:8,9 14:21 15:14,16 16:2 18:13,21 19:22 20:9 21:25 28:22 29:1,11
**scheduling** 23:20
**scholar** 8:2 13:11
**scholarly** 8:1 29:19

scholars 21:7
scholarship
 13:11 21:7,11
 21:15 28:9,21
 29:17
school 8:4
scores 11:5
second 24:6,11
see 13:5
seeing 11:16,20
seem 17:25
 21:14 28:12
seems 11:13
 13:19 22:21
 23:7
select 5:18,19
sensitive 28:2
sent 28:1,6
separate 20:6
 25:16
september 8:11
service 20:11
session 29:7
sessions 8:7
 21:21,22 22:11
 22:12 26:20,20
sets 15:12
short 28:4
 29:10
show 22:10
 24:10
sic 15:15 23:25
 26:15

significant 8:19
signing 9:10
silence 13:1
similar 5:20
single 19:22
sky 6:9
slim 30:9
snowstorm
 23:21
society 26:22
solution 28:16
 29:17
somebody
 19:25
sorry 6:18 7:12
 9:14 14:6 16:5
sort 21:12,16
 24:7 27:18
 28:16
sought 7:23
sounds 23:8
 24:3
speak 17:11
speaking 20:1
 20:18
specific 17:18
 18:23,25 23:24
 29:8
specifically
 6:15 18:24
 21:8
speech 6:20
 8:21 13:11
 16:3,4 19:20

20:19 24:13
 25:1 26:1,3,4,6
 26:7,7
spend 17:6
split 30:14
spoken 26:9
standard 9:6,7
 10:8 15:24
 18:5,6,15 19:4
 19:7,13
standards 9:11
 17:24
standing 6:1
 18:11 30:3
start 7:4 14:6
 27:10 29:12
state 1:9 5:4
 6:19 8:5 12:20
 12:24 16:15
 18:1 24:18,25
 28:2,6
state's 22:23
stated 16:6
statements
 6:15,15,23,24
 7:3,9 8:15 9:4
 12:23 25:24
 26:15,17
states 1:2 3:5
 5:7,15 12:21
status 23:25
statutory 6:24
 7:1,18 8:9,19
 10:4,7

stay 8:25
step 12:24
street 3:12
structure 22:22
students 26:23
 27:14 28:2
 29:6
submitted
 30:15
suffered 15:14
 16:3
suffice 18:11
sufficient 20:20
sufficiently 9:2
suggesting
 16:24
suggests 17:22
 20:19 27:13
suite 3:13
summary 12:10
 13:17 18:9
summer 7:4,7
 7:20
supervisor 7:6
 13:7
support 7:23
supported
 21:23 23:5
suppose 16:5
supposed 30:2
supreme 10:16
 10:18
sure 11:3 12:3
 12:16 14:23

26:8
**surface** 6:12
**surreptitiously**
  24:21
**sutherland**
  15:15

**t**

**t** 4:1,1 31:2,2
**take** 6:5 13:17
  13:20 15:12
  24:1 26:21
  27:12,13,18
  28:13,20 30:2
**taken** 14:7,13
  29:4
**talk** 6:14,22
  7:11 9:24
  12:14,15 17:24
**talking** 11:8
  14:3 23:5,13
**talks** 22:9
**teach** 8:8 26:23
**teacher** 28:4
**teachers** 8:6
  22:19 27:13
  28:3
**teaching** 7:24
  22:20 26:10
**tease** 28:8
**tell** 23:23
**tenured** 22:3,5
**terminated**
  18:3 20:23

**terms** 5:16,20
  8:9 10:2,9
  15:14 18:2
  27:11,14
**test** 16:16
**testimony**
  21:24
**tests** 26:1
**thank** 5:6,14
  16:8,10 25:10
  27:4,5,9 28:17
  30:11,12,15
**theory** 11:13,16
  11:20 12:5,12
  25:4
**thing** 15:13
  27:18 28:11
**things** 6:2,12
  7:8,19 9:12
  12:22 14:24
  26:22 29:4
**think** 6:12 8:12
  8:17 9:1 12:6
  12:10,11,20,22
  13:4 14:25
  15:2,10 22:13
  23:15,23 24:17
  25:3,18,21,22
  26:16,17 27:22
  27:22,25
**third** 1:3
**thought** 19:23
  24:11,12

**thoughts** 24:5
**thread** 30:3
**three** 7:19 11:5
**thrust** 27:19
  28:5
**tied** 20:8,13
  24:8 25:17
**ties** 20:4
**time** 5:10 7:22
  12:7,14 13:5
  13:24 15:9
  17:6 22:12,13
  23:10,20 24:18
**title** 8:14,18
  10:7,8 21:19
  25:6,11
**today** 5:9 16:23
  17:1,14 28:13
**together** 20:5
  29:4
**tolerated** 6:11
**took** 10:2
**topics** 23:22
**touched** 14:17
**towards** 24:14
**trained** 8:6
**training** 8:7
  21:13,14,21
  26:20 27:12
  29:7
**trainings** 8:10
**transcribed** 2:2
**transcript**
  29:14,14 30:14

31:4
**trend** 12:21
**trivial** 19:5
**true** 31:5
**trying** 11:17
  12:3 24:1
  29:18
**two** 6:6 8:12
  10:21 11:5,6
  14:16 17:19
  22:12 23:7
  24:5
**type** 25:14

**u**

**uh** 19:12
**ultimately**
  25:18
**uncomfortable**
  23:17 24:24
  26:8
**under** 8:14,18
  10:7,7 15:16
  18:18 25:25
**understand**
  10:20,22 12:3
  12:6 23:1,6
  24:1 29:18
**understands**
  14:24
**understood**
  5:25 26:13
**unexamined**
  7:21

**[unfair - zack]**

| | | | |
|---|---|---|---|
| **unfair** 15:11 | **viewed** 18:1 | 27:19 30:10 | **y** |
| **united** 1:2 5:14 | 21:17 | **we've** 6:13 | **yeah** 9:19 15:2 |
| 12:21 | **viewpoint** | **weigh** 13:19 | 17:7 20:4 22:2 |
| **university** 1:9 | 21:12 28:15 | **went** 11:4,6 | 24:15 29:13 |
| 5:4 6:20 8:5 | **views** 16:19 | **weston** 10:5,17 | **year** 21:1,1 |
| 9:9 12:20,24 | 21:10 23:7 | 10:17,19 11:9 | **z** |
| 16:15 18:23,24 | 26:10 | **white** 28:1,3,19 | **zack** 1:6 5:8 7:7 |
| 19:21 21:3 | **vii** 8:18 10:7,8 | 28:24 29:7,7 | 17:3 |
| 26:25 27:13 | 21:19 25:6,11 | 29:22 30:1 | |
| 28:2,6,22 29:1 | **vii's** 8:14 | **wife** 5:9 | |
| 30:3 | **violate** 6:4 | **withdraw** 16:5 | |
| **university's** | **violated** 9:6,11 | **witnesses** 21:23 | |
| 18:19 | **violation** 18:25 | **women** 7:21,25 | |
| **unprofessional** | 19:1 | **wondering** | |
| 19:20 20:14,15 | **violations** | 13:21 | |
| 20:17 24:13,24 | 18:22 | **word** 25:13 | |
| 27:1 | **voice** 24:18 | 30:6 | |
| **unprofession...** | **voluntary** | **words** 23:6 | |
| 19:24 | 22:22 | **work** 5:24 7:18 | |
| **unquote** 8:1 | **w** | 8:1 18:8,12,15 | |
| **unreasonably** | | 27:23 | |
| 18:8,11,15 | **wages** 19:17 | **working** 5:23 | |
| **unsatisfactory** | **walk** 22:21 | 6:4 | |
| 18:14 | **want** 9:24 | **worthy** 27:1 | |
| **usually** 25:15 | 10:13,21 12:22 | **writing** 22:19 | |
| **v** | 12:24,25 15:3 | 22:20 | |
| | 17:6 20:16 | **wrong** 16:16 | |
| **v** 1:8 5:3 | 24:21 28:8,23 | **wrote** 18:24 | |
| **versus** 23:4 | 29:1,11 30:5 | **x** | |
| 26:22 | **wanted** 21:2 | | |
| **viable** 26:5 | **way** 3:6 6:9 7:5 | **x** 1:5,12 | |
| **view** 21:22 | 9:7 12:22 | | |
| 28:12 | 14:22 16:2 | | |
| | 24:14,17 26:25 | | |

## <u>CERTIFICATION OF LIAISON COUNSEL</u>

I, Carolyn M. Toll, hereby certify as Liaison Counsel and on behalf of all parties that the foregoing is a correct transcript of the proceedings held on March 18, 2026 in the matter *Zack De Piero v. Pennsylvania State University, et al.*, Case No. 25-1952.

Dated:  March 31, 2026

<u>*s/ Carolyn M. Toll*</u>
Carolyn M. Toll
*Counsel for Defendants-Appellees*
*Pennsylvania State University and*
*Individual Defendants-Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2026, the foregoing Transcript of Oral Argument held on March 18, 2026 and Certification of Liaison Counsel on behalf of all parties were filed and served electronically through the Court's CM/ECF system on all counsel of record.

*s/ Carolyn M. Toll*
Carolyn M. Toll
*Counsel for Defendants-Appellees*
*Pennsylvania State University and*
*Individual Defendants-Appellees*
